The essential facts are not really in dispute. They can be recited briefly.
At the time of the incidents complained of, the plaintiff was located at 137 Barbour Street in the north end of Hartford, Connecticut. This was characterized as a low-income area where small businesses, gangsters, gamblers and drug addicts predominated. Officer Frederick Lewis was the foot patrolman on duty at this location from 6 p.m. on June 7, 1968, to 2 a.m. on June 8, 1968. He had been a police officer for two years with thirteen weeks of training which included forty hours of riot and assembly training, and had had the Barbour Street beat since April of 1968. When his tour of duty began he discovered nothing unusual, but at about 10:30 p.m. he observed a group of between fifty and seventy-five teenagers in the vicinity of the plaintiff's store. He saw one of them throw a huge cinder block. He ran to the scene, but everyone had fled. A small hole had been made in the lower left corner of the plaintiff's front window. Officer Lewis immediately reported the incident to his dispatcher. The clerk who worked in the store, the owner of the corporation and C. P. S. Burglar Alarms — the alarm had been set off by the vibrations — were called and all refused to come to the store. From the time of this incident to 1:40 a.m., when Officer Lewis left his assigned post, nothing further happened. When he left his post, there were three to four people in the vicinity of the store. He was not relieved by another patrolman, but a cruiser which covered the area from 11 p.m. on June 7, 1968, to 7 a.m. on June 8, 1968, was instructed to give the premises "extra attention." Detective Edward Stawecki, the cruising officer, had been fully advised as to what happened.
In spite of the increased cruiser surveillance throughout the morning of June 8, 1968, looters, *Page 69 
thieves and vandals enlarged the hole in the window and carted or carried away virtually all the merchandise in the store for an agreed total loss to the plaintiff of $7000. The officers assigned to the cruiser were aware of what was happening, saw the hole in the window increase in size, saw the inventory diminish, and at one time tried to apprehend, without success, four to six people who were running from the store. How many persons were involved in looting the store cannot be determined, nor can the court conclude from the evidence whether the looters were partners acting in concert with each other or were working alone.
Do these facts establish a violation of General Statutes § 7-108? If they do, then the plaintiff is entitled to a judgment in the amount of $7000. The relevant portion of the statute reads: "Each city and borough shall be liable for all injuries to person or property, including injuries causing death, when such injuries are caused by an act of violence of any person or persons while a member of, or acting in concert with, any mob, riotous assembly or assembly of persons engaged in disturbing the public peace, if such city or borough, or the police or other proper authorities thereof, have not exercised reasonable care or diligence in the prevention or suppression of such mob, riotous assembly or assembly engaged in disturbing the public peace. . . ."[1] *Page 70 
The plaintiff concedes that the court need not concern itself with the language of the statute which relates to "any mob" or "riotous assembly." The gravamen of the complaint is that the breaking and entering and looting constituted injuries to the plaintiff's property caused by an act of violence of a "person or persons while a member of, or acting in concert with, any . . . assembly of persons engaged in disturbing the public peace."
The court finds that the events in this case do not come within the intendment of the statute. As the briefs of the litigants point out, the statutes of other states are of little help. The cases in other jurisdictions give little assistance, and unfortunately, from an academic viewpoint at least, our own Supreme Court has never had to deal with the problem. Having read the dictionary definitions of the words we are trying to interpret and the legal treatises as well as 54 Am. Jur.2d, Mobs and Riots, §§ 30 and 37, note, "Municipal Liability for Property Damage under Mob Violence Statutes," 26 A.L.R.3d 1198, 1208, note, "Municipal Liability for Riot Damage," 81 Harv. L. Rev. 653, and Adamson v. New York,188 N.Y. 255, the court, without the direction of precedent, must depend in the final analysis on its own sense, logic and reason to determine what protection the statute meant to give to the citizens of the state and under what circumstances it intended to create a responsibility on the municipalities which never existed under the common law.
The court need not discuss whether the city of Hartford or the police or other proper authorities thereof exercised reasonable care or diligence, nor is it necessary to discuss the sufficiency of the notice or the right of subrogation. The plaintiff failed to prove by the better, weightier and more persuasive evidence that the elements of the statute which impose *Page 71 
liability on the defendant were established. The facts found by the court do not warrant the legal conclusion that the city of Hartford is liable to the plaintiff for the injuries it sustained. The events which occurred do not, in the court's opinion, come within the purview of the statute.
 Judgment may enter for the defendant.